UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET GHAREEB, an individual
Michigan resident, and DENNIS
SMITH, an individual Michigan
resident,

                              Case No.
                              Hon.

Plaintiffs,

v

MICHAEL T. FANT, an individual
Michigan resident, and MICHAEL T.
FANT, LLC, a Michigan limited liability
company,

Defendants.

_____/

## **COMPLAINT**

    For their Complaint against Defendants, Plaintiffs Janet Ghareeb and
Dennis Smith say:

### **Parties, Jurisdiction and Venue**

    1.    Plaintiff Janet Ghareeb (hereinafter referred to as "Ghareeb") is an
individual and resident of the City of Westland, Wayne County, State of
Michigan.

    2.    Plaintiff Dennis Smith (hereinafter referred to as "Smith") is an
individual and resident of the City of Westland, Wayne County, State of
Michigan.

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-1618

3.     Defendant Michael T. Fant (hereinafter referred to as "Fant") is an individual and, upon information and belief, is a resident of the City of Wolverine Lake, Oakland County, State of Michigan.

4.     Defendant Michael T. Fant, LLC (hereinafter referred to as "Fant LLC") is a Michigan limited liability company in good standing and which does business in the City of Plymouth, Wayne County, State of Michigan.

5.     The matter in controversy involves the Securities Exchange Act of 1934, 15 U.S.C. §78a, *et seq*, and, therefore, the Court has subject matter jurisdiction under 15 U.S.C. §78aa and 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over the claims that do not involve questions of federal law pursuant to 28 U.S.C. § 1367(a).

7.     Venue is proper in the Eastern District of Michigan pursuant to 15 U.S.C. §78aa(a) because Defendants are found, are inhabitants of, and conduct business in Wayne County, Michigan.

## General Allegations

8.     Ghareeb began saving money for her retirement immediately after graduating college in 1991, by making contributions to her 401(k) defined contribution account.

9.     Throughout her career, while working at various companies, Ghareeb continued making substantial contributions to her 401(k) accounts.

2

10.     In 1995, in an effort to maximize her retirement savings, Ghareeb set up and began contributing to an Individual Retirement Account with American Century Investments.

11.     On March 10, 2015, upon the suggestion of Smith, Ghareeb's fiancé, Ghareeb met with Fant at Fant LLC to determine how best to invest her retirement funds.

12.     Smith knew Fant because Fant had acted as Smith's CPA for almost two decades.

13.     At their initial meeting on March 10, 2015, Ghareeb communicated her moderate risk tolerance and objectives with respect to her funds in two ways: first, verbally, she informed Fant that she was "not a risky person," and that she had moderate risk tolerance and growth objectives with respect to her Investment Account, and second, she filled an Advisor Risk Profile Questionnaire ("Risk Questionnaire") which reflected the same.

14.     At this meeting on March 10, 2015, Fant told Ghareeb that the purpose of having her fill out the Risk Questionnaire was to determine her objectives and the strategy he was to employ. That Risk Questionnaire confirmed that Ghareeb had a "moderate" risk tolerance and a long-term investment objective.

15.    At the March 10, 2015 meeting, after discussing the strategy Fant would employ and in reliance on Fant's representations, Ghareeb retained him and Fant LLC as her investment advisor by executing an investment advisory agreement dated March 10, 2016, attached hereto as **Exhibit A** ("Advisory Agreement") and a risk questionnaire, attached hereto as **Exhibit B** ("Risk Questionnaire").

16.    Under the Advisory Agreement, Ghareeb authorized Defendants to manage her account on a discretionary basis consistent with a moderate risk investment strategy involving long-term investments.

17.    On or about March 15, 2015, in reliance on the Advisory Agreement, Ghareeb transferred the funds from her American Century IRA, in the amount of $9,438.88, to Fant LLC to be included in her investment account to be managed by Defendants, TradePMR Account number 4440-8950 (hereinafter "Investment Account").

18.    Between March 25, 2016 and April 30, 2015, Ghareeb transferred her Chase IRA, which contained funds transferred from Ghareeb's 401(k) accounts with various employers since 1991 and her buyout from Visteon Corporation's pension stock, the amount of $279,137.96 to Fant LLC to be added to her Investment Account.

4

19.    Ghareeb transferred a total of $288,576.84 into her Investment Account by April of 2015. **Exhibit C**, April Account Snapshot.

20.    Instead of employing a moderate risk/growth strategy of long-term investments, Defendants made unauthorized, improper  and highly speculative investments in the Investment Account by investing in highly leveraged and volatile exchange-traded funds producing short-term results, and day-trading some of Ghareeb's funds, none of which was authorized by the Advisory Agreement.

21.    Specifically, on December 17, 2015, Defendants purchased 300 shares, with $34,366.45 of Ghareeb's money, of the ETF QQQ PowerShares which is classified by the Morningstar rating service as "high risk," and sold the 300 shares of it the same day, at a loss of $ 1,028.97. **Exhibit D**, December Statement.

22.    Ghareeb never authorized Defendants to implement a strategy involving day-trading or of high-risk, short-term investments in her retirement account.

23.    Defendants also made other very short-term investments at a loss. On January 8, 2016, Defendants purchased 394 shares of Facebook stock for $38,792.13 and sold the same number of shares 12 days later for a loss of $2,224.47. **Exhibit E**, January Statement.

5

24.    Defendants also lost larger sums of money in the Investment Account by purchasing substantial quantities of risky, highly leveraged exchange-traded funds ("ETFs") with Ghareeb's money.

25.    On November 12, 2015, Defendants purchased 1000 shares of Proshares Ultrashort QQQ (symbol: QID) for $29,682.45.  On November 17, 2015, Fant purchased an additional 3,000 shares of QID for $91,357.75.  On November 28, 2015, Fant sold all 4,000 shares for $118,035.38 – a loss of $3,004.82.

26.    Proshares Ultrashort QQQ invests in derivatives that correspond to two times the inverse of the daily performance of the NASDAQ 100 index.  In other words, if the NASDAQ 100 would have produced a one-day daily gain of $100, the QID would lose $200.

27.    Defendants never discussed with Ghareeb the wisdom of investing in this vehicle, nor was the vehicle consistent with Ghareeb's long-term, moderate risk strategy.

28.    On February 23, 2016, Defendants purchased three extremely risky leveraged ETFs with Ghareeb's money. He purchased 5,327 shares ($102,636.91 worth) of Direxion SHS TR 3X leveraged ETF (symbol: SPXS), 658 shares ($38,484.45 worth) of Direxion SHS Daily Sm Cap Bear 3X leveraged ETF (symbol: TZA), 1,107 ($38,468.14 worth) Proshares Ultrashort

Kotz Sangster Wysocki P.C.  Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-1618

6

QQQ (symbol: QID) (hereinafter, SPXS, TZA and QID shall be referred to as the "Leveraged ETFs"), **Exhibit F**, February Statement.

29.    The Direxion SHS TR 3X fund invested in swap agreements, futures contracts, options, reverse repurchase agreements and other investments designed to correspond to three times the inverse of one daily performance of the S&P 500 index.

30.    The Direxion SHS Daily Sm Cap Bear 3X fund invested in swap agreements, futures contracts, options, reverse repurchase agreements and other investments designed to correspond to three times the inverse of one daily performance of the Russell 2000.

31.    Defendants sold the same 5,327 shares of SPXS the purchased for $102,636.91 on July 27, 2016 for $67,421.23 – a loss of $35,238.13.

32.    Defendants sold the same 658 shares of TZA they purchased on February 23, 2016 for $38,484.45 on July 27, 2016 for $20,022.69 – a loss of $18,461.76.

33.    Defendants sold the same 1,107 of QID they purchased on February 23, 2016 for $38,490.59 on July 27, 2016 for $29,295.14 – a loss of $9,195.45.

34.    The balance of the Investment Account rapidly plummeted from $256,710.46 at the end of January, 2016 to $220,539.11 at the end of March,

7

2016 because of these and other improper trades Defendants made. **Exhibits E** and **G**, January 2016 and March 2016 Account Snapshots respectively.

35.     The investments Defendants made were patently unsuitable for Ghareeb, and are not consistent with the moderate risk approach Defendants represented they would employ in her retirement account.

36.     On February 29, 2016, Ghareeb called Fant several times to inquire about the massive losses he had caused in her account.

37.     Fant told Ghareeb that some of the losses occurred because of TradePMR's failure to process some of the trades he had ordered.

38.     On or around March 15, 2016, Ghareeb again contacted Fant to discuss her losses, and Fant told her that the "problem would be fixed."

39.     Despite Fant's representation that the "problem would be fixed," the funds in Ghareeb's Investment Account continued to decline; on May 31, 2016, the balance of the Investment Account totaled $208,473.04. **Exhibit H**, May Account Snapshot.

40.     Because of the investment strategy Defendants employed, Defendants lost almost a third of the total funds in Ghareeb's account within months of taking control of her retirement account, and at a time when the market was at an all-time high.

8

41.    On June 8, 2016, Ghareeb and Smith met with Fant at Fant LLC to discuss the massive losses that were the subject of Ghareeb's February 29, 2016 phone calls and those that had occurred since.

42.    At this meeting, Fant admitted that he "doesn't know the TradePMR system well."

43.    Also at this meeting on June 8, 2016, Fant claimed that Ghareeb's losses were in part due to TradePMR's failure to process trades he made, but he had no confirmations or records of any sort which indicated he had made any of these claimed trades.

44.    During this meeting on June 8, 2016, Fant apologized to Ghareeb and Smith, said he still intended to "fix the issue" with TradePMR, and executed a promissory note in which he promised to pay "$50,000.00 to Dennis Smith on August 7, 2016," to cover some of the losses he had caused in Ghareeb's retirement account (the "Promissory Note"). **Exhibit I**, Promissory Note.

45.    At this meeting on June 8, 2016, Fant represented to Ghareeb that her account was in cash other than the three Leveraged ETFs.

46.    Fant further represented that he was working with TradePMR to restore her positions in the Leveraged ETFs in accordance with the sell orders he claimed to have executed.

9

47.     On June 8, 2016, Ghareeb told Fant she "couldn't afford to lose any more money," and verbally instructed Fant to liquidate the remaining investments in her Investment Account and make no more trades.

48.     Despite executing the Promissory Note, on August 7, 2016, Fant failed to pay Smith the $50,000.00 he had promised to pay him.

49.     Smith called Fant regarding his failure to pay.

50.     Fant wrote a personal check to Ghareeb on August 11, 2016 for $10,000.00, which she cashed. **Exhibit J**, Fant Check.

51.     Since the date Fant issued the Promissory Note.

52.     Despite Ghareeb's instruction on June 8, 2016 to Fant to execute no more trades in her Investment Account, Fant made additional trades in the Investment Account, and has caused her to sustain substantial additional losses. **Exhibit K**, July Account Snapshot.

53.     In fact, between March 31, 2016 and August 15, 2015, Fant caused an additional $20,539.11 loss to the Investment Account.

54.     On August 16, 2016, Ghareeb personally visited Fant LLC and instructed Fant in writing to not make any changes from that point forward to her account.

55.     On August 16, 2016, Ghareeb's account balance totaled $200,000.00. **Exhibit L**, August Account Snapshot.

10

56.     On or about August 17, 2016, Ghareeb transferred her Investment Account from Fant LLC to a different investment advisor.

57.     To date, Fant has paid only the $10,000 toward the losses he caused in Ghareeb's Investment Account.

58.     Fant has made no payments to Smith on the Promissory Note.

59.     Since August 11, 2016, neither Fant nor Fant LLC have made any additional payments to Ghareeb to compensate her for the additional funds Fant lost in her account.

60.     On August 26, 2016, Fant forwarded Ghareeb correspondence dated July 14, 2016 an attorney, Anthony Paesano ("Paesano"), drafted on his behalf on July 14, 2016 to TradePMR. **Exhibit M**, the "July Correspondence."

61.     The July Correspondence relates to Fant's claims that TradePMR failed to process trades pertaining to the Leveraged ETFs.

62.     In the July Correspondence, Paesano claims "[i]t is my understanding that, on March 3, 2016, Fant processed the position sales of TZA, QID and SPXS through the eCustody portal."

63.     Paesano further explains that "[a]pproximately two weeks [after he allegedly ordered the trades], Fant noticed that PMR had not processed the sales as he had ordered."

11

64.     If true, Defendants neglected to follow up and ensure that TradePMR had timely executed all orders.

65.     Additionally, Paesano claims, "[g]iven the additional losses incurred since March 3, 2016, i.e. the reduction in value of TZA, QID and SPXS, Fant determined that he had no other option but to hold these positions in the hope that PMR would remedy its error by putting his clients in the same position as if PMR had processed the sell orders as requested on March 3, 2016."

66.     If true, Defendants had no right to hold what they claim are erroneous positions in the hope that TradePMR would change these positions.

67.     Paesano also claims that, "Fant's client's positions in TZA, QID and SPXS are not consistent with the original buy orders, i.e. his clients own more than what was purchased."

68.     If true, Defendants neglected and failed to follow up with TradePMR to ensure their orders were correctly executed.

## COUNT I
### Breach of Fiduciary Duty - Ghareeb v. Defendants

69.     Plaintiff Ghareeb realleges and incorporates by reference the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

70.     Ghareeb transferred all of her retirement savings to Fant LLC and hired Fant LLC as her investment advisor, pursuant to initial discussions she

12

had with Fant, and the terms of the Advisory Agreement, for Fant to make investments in her Investment Account on a discretionary basis.

71.    As her investment advisor, Defendants had a duty to manage the Investment Account in a manner which directly comported with Ghareeb's needs and objectives, as stated in her Risk Questionnaire.

72.    Defendants breach their duty by failing to manage Ghareeb's Investment Account in accordance with her needs and objectives by employing an incredibly risky strategy – investing in highly leveraged exchanged traded funds and day-trading – when Ghareeb indicated on her Risk Questionnaire that her objective was for Defendants to take a moderate risk approach for the long term.

73.    Defendants further breached their duty by failing to monitor Ghareeb's account and failing to notice her positions in particular funds were not consistent with the buy orders he claims he made.

74.    Defendants also breached their duty by failing to notice for more than two weeks that trades they purportedly ordered had not been executed.

75.    Defendants had a duty to keep Ghareeb informed regarding the changes in the market which affect her interests, and to act responsively to protect those interests.

76.     Defendants breached their duty by their failure to inform Ghareeb of market changes, and failure to act responsively to protect her interests.

77.     Defendants further breached their duty by their decision to hold highly volatile funds while they continued to decline in the hopes that TradePMR would restore Ghareeb's positions.

78.     Defendants had a duty to explain forthrightly to Ghareeb the practical impact and potential risks of the course of dealing in which they were engaged.

79.     Defendants breached this duty by their failure to keep Ghareeb apprised of the risks associated with the strategy they employed.

80.     As a direct and proximate cause of Defendants' actions, Ghareeb has suffered damages.

WHEREFORE, Plaintiff Janet Ghareeb demands judgment in her favor and against Defendants Michael T. Fant and Michael T. Fant, LLC for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT II
## Breach of Contract – Investment Advisory Agreement (Ghareeb v. Defendants)

81.     Plaintiff Ghareeb realleges and incorporates by reference the allegations contained in paragraphs 1 through 80 as if fully set forth herein.

Kotz Sangster Wysocki P.C.  Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-1618

82.    In reliance on Defendants' representations during their March 10, 2016 meeting, Ghareeb transferred all of her retirement savings to Fant LLC, opened an Investment Account with Fant LLC, and deposited all of her retirement savings into this Investment Account.

83.    On March 10, 2015, Ghareeb and Defendants entered into an Advisory Agreement.

84.    Per the Advisory Agreement, Defendants had "the power and authority to supervise and direct on a discretionary basis the investments of and for [Ghareeb's] account," and was to "practice[] custom management of portfolios, on a discretionary basis, according to [Ghareeb's] objectives."

85.    Ghareeb's objective was for Defendants to employ a moderate risk and growth strategy with respect to her Investment Account, as reflected in her Risk Questionnaire.

86.    By their actions, as described herein, Defendants entirely failed to employ a strategy consistent with Ghareeb's objectives, and thus breached the Advisory Agreement.

87.    Because of Defendants' breach of the Advisory Agreement, Ghareeb has suffered damages.

WHEREFORE, Plaintiff Janet Ghareeb demands judgment in her favor and against Defendants Michael T. Fant and Michael T. Fant, LLC for compensatory

15

and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT III
### Breach of Contract - Promissory Note (Smith v. Fant)

88.　Plaintiff Smith realleges and incorporates by reference the allegations contained in paragraphs 1 through 88 as if fully set forth herein.

89.　On June 8, 2016, Fant executed a valid and binding promissory note (the "Promissory Note").

90.　Per the Promissory Note, Fant was obligated to pay Smith $50,000.00 on August 7, 2016.

91.　Good and valuable consideration was exchanged for the Promissory Note, as Fant executed it in exchange for offsetting a part the losses Fant caused to Ghareeb.

92.　Fant has breached the Promissory Note by his failure to pay per its terms.

93.　Because of Fant's breach, Smith has suffered damages.

WHEREFORE, Plaintiff Dennis Smith demands judgment in his favor and against Defendant Michael T. Fant for $50,000.00 in compensatory damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-1618

## COUNT IV
### Negligence (Ghareeb v. Defendants)

94.    Plaintiff Ghareeb realleges and incorporates by reference the allegations contained in paragraphs 1 through 93 as if fully set forth herein.

95.    In reliance on Defendants representations during their March 10, 2016 meeting, Ghareeb transferred all of her retirement savings to Fant LLC, opened an Investment Account with Fant LLC, and deposited all of her retirement savings into this Investment Account.

96.    Ghareeb hired Defendants as her financial advisor for it, through its agent, Fant, to invest per the terms of the Advisory Agreement.

97.    As Ghareeb's financial advisor, Defendants owed a duty to exercise due care with respect to the trades ordered in her Investment Account.

98.    By engaging in the activities described herein, including, but not limited to by Defendants day-trading and purchasing high risk, leveraged funds, Fant and Fant LLC breached that duty.

99.    Ghareeb has suffered substantial losses as a proximate cause of Fant and Fant LLC's conduct and breach of their duty of care.

WHEREFORE, Plaintiff Janet Ghareeb demands judgment in her favor and against Defendants Michael T. Fant and Michael T. Fant, LLC for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

17

## COUNT V
### Fraud (Ghareeb v. Defendants)

100.   Plaintiff Ghareeb realleges and incorporates by reference the allegations contained in paragraphs 1 through 99 as if fully set forth herein.

101.   In reliance on Fant's representations during their March 10, 2016 meeting, Ghareeb transferred all of her retirement savings to Fant LLC, opened an Investment Account with Fant LLC, and deposited all of her retirement savings into this Investment Account.

102.   Fant, verbally by telling Ghareeb on March 10, 2015 at their meeting that he would invest consistent with the strategy she determined on her Risk Questionnaire, and through signing the Advisory Agreement, made false statements to Ghareeb regarding his intentions and strategy with respect to her Investment Account.

103.   Ghareeb relied on Fant's misrepresentations regarding his intended strategy in retaining him and engaging his firm, Fant LLC, as her investment advisor.

104.   Fant failed to employ the agreed upon strategy by making risky trades in volatile funds on several occasions, including but not limited to those he made on November 12, 2015, November 17, 2015, November 18, 2015, December 17, 2015, January 8, 2016, January 20, 2016, February 23, 2016 and July 27, 2016.

18

105.    Fant's material misrepresentations caused Ghareeb substantial harm.

106.    Further, during the time Defendants acted as Ghareeb's investment advisor, Fant made additional false statements to Ghareeb, including when, in an attempt to retain Ghareeb's Investment Account, on or about March 15, 2016, he claimed that TradePMR would restore her Investment Account in accordance with the trades he allegedly executed.

107.    Despite that Ghareeb instructed Fant on or about June 8, 2016, to liquidate the remaining investments in her Investment Account and make no more trades, and that Fant agreed to do so, Fant ordered additional trades and caused Ghareeb to suffer additional losses.

108.    Fant knew that his representations and omissions were material to Ghareeb, and Fant made these misrepresentations and omissions with the intent that she would rely upon them.

109.    Ghareeb reasonably relied upon Fant's misrepresentations and omissions to her detriment by opening an Investment Account with Fant LLC, hiring Defendants as her investment advisor on March 10, 2015, and leaving her Investment Account in their discretionary control after her discussion with Fant on or about March 15, 2016.

110.    As a direct and proximate result of her reliance upon the Fant's misrepresentations and omissions, Ghareeb has been damaged.

19

WHEREFORE, Plaintiff Janet Ghareeb demands judgment in her favor and against Defendants Michael T. Fant and Michael T. Fant, LLC for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT V
**Violation of Sections 10(b) and Rule 10b-5 of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(I), *et seq.* (Ghareeb v. Defendants)**

111.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 as if fully set forth herein.

112.   In reliance on Fant's representations during their March 10, 2016 meeting, Ghareeb transferred all of her retirement savings to Fant LLC, opened an Investment Account with Fant LLC, and deposited all of her retirement savings into this Investment Account.

113.   At their March 10, 2016 meeting, Ghareeb clearly indicated her intentions with respect to the investment strategy and the types of securities she intended Fant to trade in her account in multiple ways at their initial meeting on March 10, 2015, both verbally and in writing, including, but not limited to in her Advisory Agreement and Risk Questionnaire.

114.   Fant, verbally by telling Ghareeb on March 10, 2015 at their meeting that he would invest consistent with the strategy she determined on her Risk Questionnaire, and through signing the Advisory Agreement, made material

20

misrepresentation and false statements to Ghareeb regarding his intentions and strategy with respect to her Investment Account.

115.   On March 10, 2015, Fant acknowledged that he understood and agreed to employ a strategy consistent with Ghareeb's objectives, both verbally and by signing the Advisory Agreement.

116.   The Securities Exchange Act states in pertinent part, "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange […][t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement [1] any manipulative or deceptive device or contrivance."

117.   Rule 10b-5 prohibits the use of any "device, scheme, or artifice to defraud," and creates liability for any misstatement or omission of a material fact.

118.   Defendants defrauded Ghareeb by making the material misrepresentations detailed above regarding the funds they purchased in her Investment Account.

119.   Defendants failed to employ the agreed upon strategy by making risky, short-term trades in volatile funds on several occasions, including but not

21

limited to those he made on November 12, 2015, November 17, 2015, November 18, 2015, December 17, 2015, January 8, 2016, January 20, 2016, February 23, 2016 and July 27, 2016.

120.    Defendants made these material misrepresentations with the intent to defraud or recklessly.

121.    Ghareeb reasonably relied on Defendants' representations, as Defendants were acting in a fiduciary capacity and had agreed to employ a moderate risk/growth strategy both verbally and in signing the Advisory Agreement.

122.    Defendants' material misrepresentations proximately caused Ghareeb to suffer substantial losses.

WHEREFORE, Plaintiff Janet Ghareeb demands judgment in her favor and against Defendant Michael T. Fant and Michael T. Fant, LLC for compensatory and special damages, interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT VI
## Violation of the Anti-Fraud Provisions of the Michigan Uniform Securities Act, M.C.L. § 451.2101 *et seq.* (Ghareeb v. Defendants)

123.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 122 as if fully set forth herein.

KOTZ SANGSTER WYSOCKI P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

124.  In reliance on Fant's representations during their March 10, 2016 meeting, Ghareeb transferred all of her retirement savings to Fant LLC, opened an Investment Account with Fant LLC, and deposited all of her retirement savings into this Investment Account.

125.  On March 10, 2015, Ghareeb and Defendants entered into an Advisory Agreement, and per the Advisory Agreement, Defendants had discretionary authority over the Investment Account.

126.  Ghareeb clearly indicated her intentions and objectives with respect to the investment strategy and the types of securities she intended Defendants to trade in her account in multiple ways at her initial meeting with Fant on March 10, 2015, both verbally and in writing, including, but not limited to in her Advisory Agreement and Risk Questionnaire.

127.  M.C.L. 451.2509(6) states in pertinent part: "[a] person that receives, directly or indirectly, any consideration for providing investment advice to another person and that employs a device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit on the other person is liable to the other person."

128.  Defendants made material misrepresentations to Ghareeb regarding the securities he purchased in Ghareeb's Investment Account.

129.   On March 10, 2015, Fant acknowledged that he understood Ghareeb's objectives and indicated that he would invest in funds consistent with her objectives, both verbally and by signing the Advisory Agreement.

130.   Defendants failed to employ the agreed upon strategy by making risky trades in volatile funds on several occasions, including but not limited to those he made on November 12, 2015, November 17, 2015, November 18, 2015, December 17, 2015, January 8, 2016, January 20, 2016, February 23, 2016 and July 27, 2016.

131.   Defendants defrauded Ghareeb by making material misrepresentations regarding the types of funds he would purchase in her Investment Account.

132.   Ghareeb reasonably relied on Defendants' representations, as Defendants, as her financial advisor, were acting in a fiduciary capacity.

133.   Defendants' material misrepresentations proximately caused Ghareeb to suffer substantial losses.

134.   Defendants made untrue statements of material facts or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

24

135.   Under Michigan Uniform Securities Act, Ghareeb is entitled to the losses she suffered, interest at 6%, reasonable attorney fees and costs determined by the Court.

WHEREFORE, Plaintiff Janet Ghareeb demands judgment in her favor and against Defendants Michael T. Fant and Michael T. Fant, LLC for compensatory and special damages, 6% statutory interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

Respectfully submitted,

KOTZ SANGSTER WYSOCKI PC

/s/ Courtney B. Ciullo
By:    Courtney B. Ciullo (P71949)
        Dennis K. Egan (P29116)
*Attorneys for Plaintiffs*
400 Renaissance Ctr, Ste. 3400
Detroit, MI 48243
(313) 259-8300
cciullo@kotzsangster.com

Dated:  September 28, 2016